WM. H. HUGHES, Ex'r, v. S. P. BOONE.

*Evidence, written admissions;* § 590; *privileged communications to counsel—Bonds, consideration of can be gone into; when fraud vitiates—Compromise—Motion for reference, apt time—Usury—Money paid under mistake of fact—Dealings between Mortgagor and Mortgagee.*

1. An executor brought suit upon certain bonds payable to his testator; it did not appear that the defendant was indebted to testator on any other account than the bonds; it did appear, from a paper in the handwriting of testator, that the proceeds of certain cotton were to be credited on the bonds. Under these circumstances it is proper to admit in evidence, on behalf of defendant, upon an issue as to payment, memoranda in the handwriting of testator to the effect that he was to give credit for certain amounts derived from sales of cotton, although to what *particular debt* the credit was to be given is not stated in the memoranda.

2. Where the relation of attorney and client exists all communications made to the attorney on the faith of such relation, or in consequence of it, are privileged, and the attorney will not be permitted to disclose them unless the client assent. Without such assent the lips of the attorney are perpetually sealed. To this general rule there are several qualifications: (1) If the attorney becomes a subscribing witness, he must give evidence of all that a subscribing witness can be required to prove; (2) he must tell what occurred in his presence, though his presence was in consequence of his employment; (3) if he was attorney for several parties in the same transaction, he can testify to all that was said and done, *as between them;* (4) the rule does not apply to communications between parties to an agreement made before an attorney, or between such parties and the attorney of one of them, or when made by one party to his counsel in the presence of the other party, or when made by one party to the attorney of the other party; (5) communications made to an attorney employed to prepare a deed are privileged, yet he must testify as to what transpired at the time of the execution, when all the parties were present, and as to any fact which then occurred; (6) the rule does not apply when advice is sought to aid in the violation of the criminal law, when the act is criminal, *per se,* and not merely *malum prohibitum;* (7) by *The Code,* § 1349, communications to counsel, in cases of fraud, where the State is concerned, are not privileged.

3. It is not for the attorney to determine for himself whether a communication is privileged; but it is for the Court to determine, and in order to do so, it is competent for the Court to make the preliminary inquiry.

4. Under the present system of practice, in which law and equity may be blended in one action, fraud or mistake in the consideration of a bond may be shown.

5. While fraud in the *factum* might avoid a bond altogether, fraud or mistake in the consideration, so far as the consideration is legal, would not have that effect.

6. An unaccepted offer of compromise cannot be proven.

7. Where an executor is the subscribing witness to a receipt given by the defendant to his testator, and proves the execution on the trial: *Held,* that he thereby opens the door, and the defendant can testify as to transactions between himself and deceased connected with the execution of the receipt.

8. A fact in no way involving a transaction or communication does not come within the prohibitions of § 590.

9. It is not error to refuse a compulsory reference, when the motion to refer is not made until after the close of the evidence.

10. Under the act of 1866 (Bat. Rev., ch. 114), the penalty for usury was a forfeiture of all interest. Neither ch. 84, Laws 1874-'75, nor ch. 91, Laws 1876-'77 (*The Code,* § 3835), repealed the act of 1866, as far as the *rate of interest is concerned,* but the act of 1876-'77 relieved against *penalties* incurred under the act of 1866.

11. On January 3, 1874, defendant borrowed of plaintiff's testator $1,000, and gave his bond for the payment of $1,120, the $120 being one year's interest at 12 per cent. The bond was payable one year after date, with interest after maturity " at the rate of twelve per cent." It was not expressed in the bond that it was for borrowed money: *Held,* that the amount recoverable on the bond in an action brought in 1883 was one thousand dollars and interest at *six per cent.*

12. Interest is the creature of statute, and usury has been unlawful from the days of Moses. There has never been a day in North Carolina since long before it was a State, that it was lawful to take a greater rate of interest than 6 *per cent.*, or 8 *per cent.* when stipulated; and the law would be treacherous to itself if it were to allow the enforcement of forbidden usurious contracts because no penalty was attached.

13. Although money paid under a mistake of law cannot be recovered, and, in the absence of a statute to that effect, usury voluntarily paid, with a full knowledge of the facts, cannot be recovered; yet, where an illiterate mortgagor. who confided greatly in the mortgagee, delivers cotton to the mortgagee to be sold and the proceeds applied to the mortgage debt, it is the duty of the mortgagee to apply the proceeds to the debt and lawful interest. Such delivery of cotton will not, under the circumstances, be construed a payment of, or applicable to, usurious interest contracted to be paid by the terms of the mortgage; and if the payments thus made exceed the debt and legal interest, the surplus can be recovered by the mortgagor.

14. Where mortgagor delivered cotton to the mortgagee to be sold and proceeds applied to the mortgage debt, mortgagor must be credited with the amount received by the mortgagee from the sales, when that can be shown; if that cannot be shown, the credit must be of the market value of the cotton at the date of delivery.

CIVIL ACTION, tried before *Graves, J.,* at January Term, 1888, of the Superior Court of NORTHAMPTON County.

Wm. T. Stephenson died in 1876, and the plaintiff is his executor.   This action was brought March 3, 1883.

The complaint alleges that on the 3d day of January, 1874, the defendant executed to his testator two bonds, each for the sum of $1,120, payable on the 3d day of January, 1875, with twelve per cent. interest thereon from January 3, 1875, till paid, the consideration being for money lent.

It further alleges that divers payments were made on said bonds, setting them out in detail, leaving a balance due, October 1, 1885, of $1,727.29, and judgment is demanded for that sum, with interest at the rate of twelve per cent. on $893.27 from October 1, 1885, till paid.

The answer admits the execution of the bond, and alleges that the consideration of each was $1,000, and that twelve per cent. interest for one year was added to each, and the bonds given for the aggregate of principal and interest; that the same was usurious and contrary to law, and he pleads the said usury in bar of the recovery of interest; that the payments mentioned in the complaint of "interest up to January 3, 1876," were paid on the bond, and the said W. T. Stephenson was not authorized, and had no right, to apply it to any interest.

The defendant further alleges, "that he placed in said Stephenson's hands a considerable quantity of cotton and other property, for the purpose of paying the said bond, and being entirely uneducated, and not able to calculate figures, he had to intrust the same entirely to said Stephenson, and he has recently had the same investigated, and he believes and alleges that, by reason thereof, the said Stephenson is largely indebted to the defendant."   He then alleges, in detail, payments in addition to those mentioned in the complaint, and that he has overpaid the plaintiff's testator by $1,165.76, for which he demands judgment, with interest.

The plaintiff replies, that he has not sufficient knowledge or information to form a belief as to the averments in the answer as to the consideration of the bonds, or the amounts of payment, and denies the other averments of the answer.

The record of the case on appeal is voluminous, and we consider it, as far as is practicable, consistent with a clear understanding of the numerous exceptions presented.

The first three exceptions contained in the record are abandoned in this Court.

The defendant offered in evidence, one at a time, three papers, marked " No. 2," " No. 3," and " No. 8," which purported upon their faces to be accounts of sales of cotton, rendered to W. T. Stephenson by commission merchants in Norfolk and Petersburg, aggregating $821.49, each containing endorsements in the handwriting of W. T. Stephenson, showing the number of bales, the amounts, and dates when received, indicating that they were received by the person making the endorsement; No. 2 showing " Sales 7 bales cotton, Pete Boone," No. 3, " Sales of 3 bales, S. P. Boone, by Grandy," and No. 8, " Sales of 4 bales cotton, S. P. Boone."

The plaintiff objected to the introduction of each of said papers, as well the endorsement in Stephenson's handwriting as to the contents of the inside of said papers. The Court sustained the objections as to the contents of said papers, but admitted the endorsements thereon, in the handwriting of the testator.   The plaintiff excepted to each ; and this is the first exception relied on.

The defendant then offered in evidence an account of W. T. Stephenson with Hervey, Coke & Co., of Petersburg, in which said Stephenson is credited by net proceeds of four bales cotton, $163.86, and charged with certain sums named therein.   On the back of said paper was the following endorsement:

" Sales 4 bales cotton, S. P. Boone:

    Hervey, Coke & Co.------------------------$153 86

    Express ----------------------------------- 75

                                  $153 11

I am to give credit for above amount, $153.11

April 24, 1874."


The face of said paper was proven to be in the handwriting of P E. Hervey, and the endorsement thereon in the handwriting of W. T. Stephenson.

The plaintiff objected to the introduction both of the face of said paper and the endorsement thereon ; both objections were overruled, and the contents of said paper and the endorsement thereon were admitted, and the plaintiff excepted.

The defendant then offered in evidence a receipt of the agent of the railroad at Seaboard, for four bales of cotton received from W. T. Stephenson, to Hyman & Dancy, Norfolk, Va., marked " S. T. B.," and on the back of which was the following endorsement in the handwriting of W. T. Stephenson : " Lawrence, agt., receipt, 4 bales cotton, S. P. Boone."

The plaintiff objected to this evidence; objection overruled, and plaintiff excepted.

The defendant then offered in evidence a receipt of the railroad agent at Garysburg for four bales of cotton received of W. T. Stephenson, to be shipped to Hervey, Coke & Co., Petersburg, February 20, 1874.  On the back of this was the following endorsement in the handwriting of W. T. Stephenson, "4 bales cotton, S. P. Boone, Hervey, Coke & Co."

The plaintiff objected to this evidence; objection overruled, and exception.

The defendant then introduced as a witness W. W. Peebles, one of the counsel of record for plaintiff, and who was then

actively engaged in this case as such counsel, and asked the witness to state, if he knew, how much of the amount, to-wit, $2,240, stated on the face of the two bonds sued on, was principal, and how much was interest. The plaintiff objected to the question, on the ground that the witness derived his information from Stephenson (plaintiff's testator), in the way of a confidential communication, and as such was privileged, being made to him as an attorney. The defendant insisted that the communication was not a privileged one; that the witness should state the circumstances under which it was made, if any such communication was made, so that the Court could determine whether witness was correct in thinking it privileged.

Defendant then offered, for the inspection of the Court, a deed of trust from Boone to witness, securing one of the notes sued on (copy marked " Y," and filed as a part of these exceptions). Witness admitted that he had drawn it and that it was in his handwriting.

Plaintiff objected to the Court's inspection of the deed.

Objection overruled; plaintiff excepted.

Witness was then examined by plaintiff, and stated, that the deed was drawn by him at the same time the notes were written; that the deed and notes were written under the following circumstances, to-wit: The notes and deed were written in the office of the Register of Deeds. Defendant (Boone), Dr. W. S. Copeland, Stephenson, W. D. Coker, W. T. Buxton, the Register of Deeds, were all present, and, I think, R. B. Peebles came in, because he was a witness to the bonds. The witness then stated further, that he was the attorney and counselor for Stephenson in the transaction, and that the communications made to him were made in his professional capacity as a lawyer; that he did not advise with Boone; that he could not remember whether the deed of trust was read over to Boone by him; did not remember that he saw him sign it.

The Court, after reading the deed in trust, held that the communications, if any were made at the time when the notes and deed were written, were not privileged, and required the witness to answer.  Plaintiff excepted.

The plaintiff then objected to inquiring into the consideration of the bonds; overruled; plaintiff excepted.

Witness then testified, as follows: I do not know how much of the $1,120, mentioned on the face of each bond, was principal, and how much was interest; all I know is what Stephenson said to me before I wrote the deed of trust. I asked him what should be the amount of the bonds?  He asked me if interest was not paid at maturity, how could he get interest on interest?  I asked him how long the bond was to run.  He said one year.  I said, " you can count interest from date of bond for a year, and add it to the principal, and then the principal and interest will draw interest from the time the bond falls due."  I knew that the rate of interest the bonds were to draw was twelve per cent. Stephenson then made some figures, and handed me, on a slip of paper, the amount of bond, $1,120.  I then wrote one bond for that sum, drawing twelve per cent. interest from the time it was to fall due, and Stephenson then drew the other from it, making an exact copy thereof.  Stephenson never told me, nor did Boone, the amount of money borrowed.  I do not know how much Boone paid Copeland for the land; Stephenson let him have some and W. D. Coker let him have some.  Stephenson told me what rate of interest to make the bond draw.  I know the defendant; he makes his mark; I don't think he can read or write.  I do not remember that the bond was read over to Boone.

W. J. Rogers is introduced by plaintiff as a witness, and papers marked " B," " C," " D " and " E " are shown him, and he says he signed " B " and " C," as a subscribing witness, and that S. P. Boone signed or acknowledged them before him ; that he had never seen Boone to know him

before that time; that it was done in the Register's office in December, 1874, or January, 1875; that the date was fixed in his mind from the fact that he had just qualified as administrator on his father's estate, and he was in the Register's office looking up some land titles and boundaries. Stephenson asked me to look over the account he had. He had another paper besides the ones I witnessed (it was admitted that "D" was that paper). I examined the paper, and found no mistake in it, that I could see; the calculations therein were correct, and I so stated. Boone signed "B" and "C," and Stephenson gave him some papers. I did not know what they were; they seemed to be accounts of sales of cotton. Stephenson then said to me: "That is all right, is it not, Bug?" I replied, that it would be all right if he, Boone, and I lived, but if I should die, it might not be all right; that he had not given Boone anything to show that he had paid the interest on the notes. Stephenson said, "That is so; how shall I fix it?" I replied, that he ought to endorse on the notes, "interest paid to January 1st, 1875." He said, "Yes, that would be right;" and took out two papers, which he said were the notes, and endorsed something thereon. So far as I saw, it was fair; it seemed to me that they had talked the matter over. I did not detect any errors; there was no pressure. The statement was made before, and was brought to me for review.

*Cross-examined.*—Witness stated that no money was paid to Boone; the statement was not read to Boone; none of the papers were read to Boone, nor their contents explained to him. I only know what appeared on the papers that Mr. Stephenson had; I did not see the inside of the two $1,120 notes. The witness was then shown the said notes, and asked if the face of said notes had been shown him by Stephenson, could he not have seen that in statement "D" Stephenson had charged Boone interest on said bonds before

it was due? and he answered, "Yes;" that in statement "D,'' Boone was charged with interest on said notes up to January 1, 1875; that upon inspection of exhibit "D," he thought both of the entries of interest was to January, 1, 1875; that both of the endorsements on the $1,120, "Int. paid on this to the 3d day of January, 1876, eighteen hundred and seventy-six, W. T. Stephenson," seem to have been first written 1875, and afterwards altered to 1876; that when Boone signed "B" and "C," he said little or nothing; relied entirely on Stephenson's statement, and whatever Stephenson said seemed to be all right with Boone.

Exhibit "B," referred to in W. J. Rogers' testimony, is as follows, to-wit:

"Received of W. T. Stephenson, one thousand and ten dollars and four cents, amount of cotton shipped by him for me to different commission merchants in Norfolk and Petersburg, Va., up to this 11th day of January, 1875.

his<br>
"S. P. + BOONE,<br>
mark.

"Witness: W. J. ROGERS."

Exhibit "C" is as follows, to-wit:

"Received of W. T. Stephenson, as per credit, one hundred dollars, as per draft given by Lawrence Boone on Kader Biggs & Co. for one hundred dollars.

his<br>
"S. P. + BOONE.<br>
mark.

"Witness: W. J. ROGERS."

Exhibit "D," referred to in the testimony of W. J. Rogers, is as follows, to-wit:

HUGHES *v.* BOONE.

| | | |
|---|---:|---:|
| Amt. note | $1,120 | 00 |
| Int. 12 mo. to 1st January, 1875 | 134 | 00 |
| Amt. note | 1,120 | 00 |
| Int. to 1st January, 1875 | 134 | 00 |
| Order | 17 | 00 |
| Note | 15 | 00 |
| Note | 21 | 60 |
| Receipt | 70 | 00 |
| | $2,631 | 60 |
| | 1,010 | 04 |
| | $1,621 | 56 |

| | | | |
|---|---:|---:|---:|
| Credit by 7 bales | $403 | 69 | |
| " " 4 " | 153 | 11 | |
| " " 3 " | 122 | 64 | |
| " " draft | 100 | 00 | |
| " " 4 bales | 230 | 60 | |
| | | | $1,010 04 |

On the back of this statement was the following endorsement (admitted to be in the handwriting of W. T. Stephenson), to-wit:

"S. P. Boone.

Notes and Statement.

Dec. 24th, 1874."

Exhibit " E " was as follows, to-wit:

| | | |
|---:|---:|---:|
| $45 23 | $17 25 | $153 11 |
| 78 16 | 15 00 | 403 69 |
| ——— | 21 60 | 122 64 |
| $123 39 | 70 00 | 230 60 |
| | ——— | 100 00 |
| $231 35 | $123 85 | ——— |
| 75 | | $1,010 04 |
| ——— | | |
| $230 60 | | |

W. H. Hughes, the plaintiff, was examined in his own behalf, and stated that he found exhibits "E" and "D" wrapped up in papers "B" and "C," among W. T. Stephenson's papers. Exhibit "F" was shown to witness. Said exhibit is as follows, to-wit:

| | | |
|---|---:|---:|
| Sale of 10 bales cotton | $455 86 | |
| Expr. | 1 75 | |
| | | $454 11 |
| | | |
| Paid for horse | $112 50 | |
| One note and int | 33 60 | |
| Cash | 10 00 | |
| | | 156 10 |
| | | |
| | | $298 01 |
| Amount on note | | 172 64 |
| | | |
| | | $125 37 |

To give Boone credit on his two notes for $125.31, and all interest is paid to January 1, 1877.

"Received, February 7, 1876, of W. T. Stephenson, four hundred and fifty-five dollars and eighty-six cents, in full of ten bales cotton shipped by me in said Stephenson's name to Hervey, Coker & Co., of Petersburg, Va.

$455.86.                                   S. P. + BOONE.
                                              his
                                              mark,

Witness: WM. H. HUGHES.

The plaintiff testified that he was asked by Stephenson to witness the above receipt; that Boone was present.

On cross-examination, he said that the paper was not read to Boone; that its contents were not explained; that he saw no money paid, and saw no papers except the one he witnessed; that S. P. Boone could not read nor write.

Plaintiff's counsel proposed to ask plaintiff the following question, to-wit:

" Did not the defendant, in W. W. Peebles' office, offer to pay you a certain amount, $370, about two years after Stephenson's death, claiming that that was the amount due on the notes?" The defendant objected, upon the ground that it was offered as a compromise. The witness answered : " I reckon it was offered as a compromise. I claimed more than was offered. The defendant's counsel, who was present at the time, acting for him, said that there was nothing due, and that they were willing to settle the matter upon the basis of allowing all principal, and 8 per cent. interest, if Boone was properly credited with the money and cotton furnished. I refused it."

The Judge being of the opinion that it was an offer of a compromise, so adjudged, and excluded the evidence. The plaintiff excepted.

Hughes testified that when Boone made payment to him, Boone did not claim that the debt was all paid, and said, if desired by Hughes, he, Boone, would get money from Odom to pay with. Hughes further testified, that he did not know how much money Stephenson lent Boone, and did not know whether or not any interest was included in the face of the bonds.

The plaintiff introduced the pleadings as evidence.

S. N. Buxton, for plaintiff, testified that Boone was a man of good sense, but could not read nor write; and, on the cross-examination, said, that when a man gained his confidence, that he relied upon him implicitly.

Plaintiff here closed, and defendant offered in evidence the deposition of plaintiff W. H. Hughes, heretofore taken before Edwin Wright, as Commissioner appointed by the Clerk of said Court, in this cause, and filed with the papers, and signed by Hughes, the plaintiff. The plaintiff objected, that the deposition was inadmissible, except to impeach the

witness. The defendant stated that it was offered for that purpose, and as a declaration made by plaintiff. Objection overruled, and plaintiff excepted.

S. P. Boone was examined in his own behalf, and was asked if the contents of exhibit "F," which was witnessed by the plaintiff Hughes, were read over to him, or understood by him? The plaintiff objected, under § 590 of *The Code.*

The Court being of the opinion that the plaintiff had opened the door to that transaction, by having himself examined as to the same, overruled the objection, and the plaintiff excepted.

The witness answered: " No one read this paper over to me; I did not know what was in it; I did not know that I was charged therein $112.50 for a horse, $33.60 for note, $10 cash, or $172.64 for interest to January 1, 1887. From the time I made the deed in trust and mortgage, up to Stephenson's death, I bought only one horse—it was a bay horse, I bought of a horse drover by the name of Bass. I bought him in the hotel lot, in company with W. D. Coker; I had some money in Coker's hands from cotton—cotton I had shipped to Hervey, Coker & Co., in Coker's name, and Coker paid for the horse $110."

The defendant was asked how many bales of cotton he delivered to the Petersburg Railroad Company at Garysburg, between January 3, 1874, and March 1, 1876, to be shipped to Hervey, Coker & Co., of Petersburg, in the name of W. T. Stephenson?

Plaintiff objected, under § 590 of *The Code;* objection overruled, and plaintiff excepted.

Witness answered, 31 bales of average size, 450 pounds to the bale; that in 1874 and 1875, and early part of 1876, cotton was worth from 12 to 13 cents. Witness further testified, that he borrowed the money to pay for land he bought of W. S. Copeland; that he paid Copeland for said land

$3,000; that he got $1,000 of it from W. D. Coker, January 3, 1874; that he paid Copeland on the 3d of January, 1874. I did not know what rate of interest I was to pay until after the bonds were signed. Mr. George Bowers was the first one who told me what interest I was paying. I never asked any one to look over my acccount with Stephenson until I consulted R. B. Peebles, about two years after Stephenson died; after he examined my papers, I never paid any more cotton or money on said notes.

To corroborate witness Boone as to the amount he paid Copeland for his land, defendant introduced in evidence the deed from W. S. Copeland to S. P. Boone; it was dated January 3, 1874, admitted to be in the handwriting of W. W. Peebles, and recited $3,000 as the consideration paid for the land.

The defendant did not deny his liability on the bonds executed to Stephenson, for the sum which he actually got.

ONE OF THE BONDS SUED ON.

$1,120.00. On the 3d day of January, 1875, with interest at the rate of twelve per cent. from said date, I owe and promise to pay W. T. Stephenson the sum of eleven hundred and twenty dollars, for value received. Witness my hand and seal, this 3d January, 1874.

his
S. P. + BOONE [Seal].
mark.

Witness: R. B. PEEBLES.

On the back of said bond is endorsed the following payments, in order named, to-wit:

January 11th, 1875. Received of S. P. Boone, three hundred and eight dollars and sixty-nine cents, in part of this note.                                                  W. T. STEPHENSON.

Int. paid on this to the 3d day of January, 1876, eighteen hundred and seventy-six.                    W. T. STEPHENSON.

1877.  Jan'y 1st.  Received of S. P. Boone, eighty-nine dollars and one cent, in part payment of this note, balance sales of cotton.  Statement filed.                    W. H. H.

1877.  December 20.  Received of S. P. Boone, four hundred and twenty-one dollars and twenty-nine cents, being net sales of ten bales of cotton, sold by N. E. Brooks, shipped by said Boone in my name.          W. H. HUGHES, *Ex'r.*

From inspection, it appears that the second endorsement was first written 1875, and then changed to 1876, and that the words "eighteen hundred and seventy-six" were written with different ink.

The other bond sued on is identical in terms.

On the back of said bond is endorsed, in the order named, the following, to-wit:

January 11, 1875.  Received of S. P. Boone, the sum of three hundred and eight dollars and sixty-nine cents, in part of this note.                    W. T. STEPHENSON.

Int. paid on this note to the 3d of January, 1876, eighteen hundred and seventy-six.          W. T. STEPHENSON.

April 4, 1875.  Received one hundred and eighty-three dollars and ninety-two cents.          W. T. STEPHENSON.

From inspection of said endorsement, it will appear that the date, January 3, 1875, was changed to 1876, and that the words "eighteen hundred and seventy-six" were written in different ink from the rest of the endorsements.

After all the evidence was in, the plaintiff handed to the Judge a written request to refer the action to a referee, under section 421. This was not made known to the defendant. The Court declined to do so, without calling it to the attention of defendant's counsel, or to the attention of plaintiff's counsel, except by not granting the motion.

In plaintiff's statement of the case, he noted an exception to this refusal.

Plaintiff and defendant both tendered issues, which were settled by the Judge, and submitted as follows:

1. Have the debts been paid?

2. If not, how much is due?

3. Has the defendant paid more than the debts?

4. If so, how much?

Plaintiff excepted to issues 3 and 4.

The plaintiff prayed the Court to instruct the jury as follows:

1. There is no statute of usury applicable to the notes declared on.

This was refused, and plaintiff excepted.

2. There is no evidence that twelve per cent. interest on the sum of two thousand dollars for one year was incorporated in the notes, in order to make $2,240 principal sum.

This was refused, and plaintiff excepted.

3. That if Boone paid 12 per cent. interest voluntarily, he cannot recover it back.

4. That if Boone paid voluntarily money in excess of the amount he owed, he cannot recover it back, unless paid under a mistake of the fact.

These two instructions were given by the Court.

5. There is no evidence that he paid either under a mistake of facts.

This was refused, and plaintiff excepted.

6. There is no evidence that there was any unfairness or duress in the settlement between Boone and Stephenson.

This was refused, and plaintiff excepted.

7. If the settlements between Stephenson and Boone were fair, Boone is bound by them.

Given in substance—plaintiff excepted.

The Court instructed the jury as follows:

"The legal rate of interest at the date of these notes was 6 per cent. per annum, and no subsequent statute has repealed that law; but there have been statutes enacted which repealed the penalties which were in force at the date of the notes, so that the defendant is liable for the legal rate of interest at 6 per cent., and the plaintiff is relieved from the penalties then in force.

The plaintiff excepted.

"Then the first question presented is to determine how much money the defendant got. If he got $2,240, then he is bound to repay that sum, but if he actually got a less sum, if he got only $2,000, then he is bound to pay only that sum."

Plaintiff excepted.

"If the defendant got $1,120 for each note, he is liable for that sum, with interest at six per cent., unless it has been paid. It is insisted by the defendant that he has paid off the entire debt. It is admitted by the plaintiff that some payments have been made, some at one time and some at another. The rule, then, for computing the interest is by what the school-boys call partial payments. The principle underlying this rule is, that the interest is first due; so when a payment is made on a note the interest is counted to the time of payment and added to the principal, and from this amount the payment is deducted and the balance becomes a new principal, bearing interest until the next payment; and interest is added, and the payment deducted, until all the payments are applied. If any payment is less than the interest due, it is to be applied to the interest, but the principal is not changed (it can never become greater) until it is reduced

by payment over and above the interest due. And payment made before interest begins to accrue must be applied to principal. You have, then, to ascertain what payments have been made and when made."

The plaintiff excepts to so much of this portion of the charge as limits his recovery to six per cent. interest.

" If the defendant has paid voluntarily more than the amount he was legally bound to pay, under a mistake of law only, he cannot recover back such excess, but if he has, by mistake of fact, paid more than was due, he has the right to recover such excess.

" If the defendant delivered cotton from time to time, shipped in the name of Stephenson, with the agreement that the proceeds were to be applied to the payment of twelve per cent. interest and the principal, the defendant cannot recover back any payment of interest voluntarily made by him, or any money applied by the plaintiff to the payment of such interest, if such application was made by the direction of the defendant, or by his consent, with full knowledge of the facts.

" If the defendant did not consent that the twelve per cent. interest should be paid, and the plaintiff or plaintiff's intestate received money or money's worth from the defendant, then the payment would be applied to the payment of the legal interest, six per cent., and then to the principal. And if the defendant, not intending to pay twelve per cent. interest, had, by a mistake in fact—a mistake in calculation may be a mistake in fact—paid more than the debt and six per cent. interest, he would be entitled to recover back so much as he had paid in excess of the debt due."

The plaintiff excepted, upon the ground that there was no evidence of such mistake.

" The relation between the plaintiff's intestate and defendant was a confidential relation—the plaintiff's intestate was

the mortgagee and the defendant was the mortgagor, and the law requires that dealings between them, concerning the mortgage debt or mortgaged property, shall be viewed more carefully than if the parties were dealing with each other at arm's length."

Plaintiff excepted.

"In order to bind a person, who cannot read and write, by a writing purporting to have been signed by him, it must appear that it was read over to him, or its contents fully stated, before it was signed, unless, after being signed, the contents of the writing were explained, and then, after knowledge of the contents, is consented to."

Plaintiff excepted.

"If the intestate of the plaintiff, Stephenson, was the mortgagee, and Boone was the mortgagor, a confidential relation existed, and if the defendant, reposing confidence in Stephenson, furnished cotton to him, to be sold and applied to the payment of the money borrowed from him, it was the duty of the intestate of plaintiff to have sold the cotton and to have applied it to the payment of his debt, with the legal rate of interest, and only the legal rate of interest, unless the defendant Boone, with a full knowledge of the facts, voluntarily assented to the payment of a greater rate of interest than the legal rate."

Plaintiff excepted.

"If the defendant Boone, with a full knowledge of the facts, voluntarily paid, or assented voluntarily to an application of, a greater rate, then he cannot recover it back.

"In determining whether, in fact, such payment was made voluntarily, the jury must bear in mind the relation of the parties, and consider what influence that relation produced on the mind of the defendant."

Plaintiff excepted to the last sentence.

"In estimating the value of the cotton shipped by the defendant, the jury must allow to the defendant the price

obtained by the plaintiff's intestate, Stephenson, when that is made to appear, and when it does not appear what price was actually obtained, then the jury must ascertain the market value of the cotton at the time it was sold by Stephenson."

Plaintiff excepted.

The jury responded to the issues set forth in the record, and after they had returned their verdict, plaintiff moved to exclude from the judgment $89.01 and $421.29, paid by Boone to plaintiff. (See complaint, answer and endorsements on bonds.) Motion refused. Plaintiff excepted.

There was a verdict and judgment in favor of the defendant, and plaintiff appealed.

*Mr. T. N. Hill,* for the plaintiff.
*Messrs. W. C. Bowen* and *R. B. Peebles,* for the defendant.

DAVIS, J. (after stating the case). The 1st, 2d, 3d and 4th exceptions may be considered together, as they all rest upon the same general ground.

The endorsements upon the papers, in the handwriting of the plaintiff's testator, were offered as declarations or admissions in regard to the cotton, for the proceeds of which the defendant insists he was entitled to credit. That the admissions or declarations of a party to a matter in controvery, in regard to that matter, whether oral or written, are admissible as against such party, is too plain to be questioned; but it is insisted by counsel for the plaintiff, that there is no evidence that the cotton, or the amount of the proceeds of the cotton, to which the endorsements related, was to be applied to the notes upon which this action is brought. The endorsements tend very clearly to show that the cotton and the proceeds of the cotton were received for and on account of the defendant, and that he was to be credited therewith, and

it nowhere appears that the plaintiff's testator had any other claims against the defendant, other than a controverted charge for a charge and two other items, aggregating $156.10. In fact, it sufficiently appears from exhibit " D," subsequently offered in evidence by the plaintiff, that the proceeds of the cotton referred to by the endorsements were to be credited by the testator on the notes.

While the exhibit " D " shows that the cotton was to be credited on the notes, it in no way tends to relieve the transaction from the imputation of unfairness, alleged by the defendant, for it then appears that the defendant is wrongfully charged with interest on the two notes ($134+$134= $268) to January 1, 1875 ; and we find that the endorsements on the notes in January, 1875, instead of showing credit for the full amount of cotton, less the sum of $123.85, applied otherwise in exhibit " D," it appears that only the sum of $308.69 was applied to each note, making the entire credit only $617.38 ; for the endorsement of the credit for interest on the notes is changed by the erasure of 1875 and substituting 1876. It is insisted by the plaintiff that the mistake of writing " Jan. 3, 1875," instead of " 1876," is easily accounted for, by the fact that at the beginning of a year such a mistake as writing the preceding date is not uncommon. But this theory is fully met and destroyed by the fact, as appears by the endorsement of the testator, that the cotton was sold in April, November and December, 1874, showing that in this respect exhibit " D " was correct. The money received for cotton in April, 1874, should have been credited at that date. The 1st, 2d, 3d and 4th exceptions of the plaintiff must be overruled.

The 5th, 6th and 7th exceptions relate to the testimony of Mr. W. W. Peebles, and may be considered together. It is insisted that Mr. Peebles, having been counsel for the testator in the matters out of which this litigation springs, is not a competent witness to testify in relation thereto.

Few rules of evidence are better settled, or founded on sounder reason of public policy, than that, whenever the relation of counsel or attorney and client exist, all communications made to the counsel or attorney, on the faith of such relation and in consequence of it, are privileged. And the counsel or attorney, if so disposed, would not be permitted to disclose them. The seal of the law closes his mouth as to them, and can only be removed by the client himself. Without his consent it is perpetual.

This elementary principle is too well established by Greenleaf and other writers upon the law of evidence, and has been sustained by too many adjudications, to need the citation of authorities. In many States of the Union it is regulated by statutory provisions, and in our own State, by statute (*The Code*, § 1349), communications to counsel in cases of fraud, where the State is concerned, are not privileged.

To the general rule, as laid down, there are several qualifications: "As where the attorney, having made himself a *subscribing witness*, and thereby assumed another character for the occasion, adopted the duties which it imposes, and became bound to give evidence of all that a subscribing witness can be required to prove." 1 Greenleaf, § 244. So, what occurred in his presence, though his presence was in consequence of his employment as counsel. *Patton* v. *Moore*, 29 N. H., 163. So, where the witness was counsel for both the plaintiff and defendant, as between them the matter was not, in its nature, private and confidential. *Michael* v. *Foil*, 100 N. C., 178, and cases cited. So, it has been held by numerous adjudications, the rule does not apply to communications between parties to an agreement made before an attorney, or between such parties and the attorney of one of them, or, when made by one party to his counsel in the presence of the other party, or when made by one party to the attorney of the other party.

So, while communications made to an attorney employed to prepare a deed would be privileged, yet he may be required to testify as to what transpired at the time of the execution, when all the parties were present, and to prove any fact which then occurred, in relation to the transaction, and still more clearly would he be competent if he were a party to the transaction 1 Greenleaf Ev., § 242. So, the rule does not apply where advice is sought to aid in the violation of the law, but the violation must be an act criminal, *per se*, not simply *malum prohibitum*. But it is insisted that the attorney must determine for himself, as to whether the communication is confidential, and that the Court had no right to inspect the deed (a copy of which is filed as an exhibit, marked "Y"). This is a mistake. It is for the Court to determine whether, under the circumstances, the communication is privileged or not, and in order to do so it is competent for the Court to make the preliminary inquiry.

The deed was written by the witness at the same time the notes were written, conveying the property purchased of Copeland to the witness in trust, to secure the payment of the notes, and it refers to a mortgage, executed the same day, and for the same purpose, conveying the land to Stephenson. The notes and deed were written at the same time. The defendant, Dr. Copeland, from whom the land was purchased by the defendant, and to pay whom the money was borrowed, the plaintiff's testator, and others, were present. His Honor " held that the communications, if any were made at the time when the notes and deeds were written, were not privileged;" and in this, we think, there was no error. By the clear and explicit ruling of the Court, the inquiry was limited to the time when the notes and deed were written, when, as appears from the evidence, the plaintiff's intestate, the defendant and others were present. But

when the witness said, " All I know is what Stephenson said to me before I wrote the deed of trust," the counsel for the plaintiffs says the Judge " ought to have stopped him."

It does not plainly appear, from the record, that what Stephenson said to the witness was " at the time " when the notes and deed were written, but it must be assumed that it was, and that, in the order of events at that *time*, it preceded the writing of the deed, for otherwise it would not have been within the limit of his Honor's ruling, and it would have been the right and the duty of the plaintiff to have objected, and no objection was made.

But we cannot see how the answer of the witness could prejudice the plaintiff, for the facts stated by him are clearly deducible from the face of the notes.

It is said, however, by counsel, " the evidence of the witness was injurious to the plaintiff, inasmuch as its tendency was to show usury." If lending money at 12 per cent. interest be usury, that appears upon the face of the note, and certainly the evidence of the witness cannot show it more plainly.

It is further objected that the consideration of the bonds cannot be inquired into. Under the present system, in which law and equity may be blended in an action, fraud or mistake in the consideration may be shown; and while fraud in the *factum* might have the effect to avoid the bond altogether, fraud or mistake in the consideration, so far as the consideration was legal, would not have that effect.

There was no error in overruling the 5th, 6th and 7th exceptions.

The 8th exception relates to the exclusion of the evidence in regard to the offer of $370 as a compromise. There was no error in this. A proposition to compromise, not acceded to, leaves the rights of the parties precisely as they were

102—11

before the proposition was made. *Poteat* v. *Badget*, 4 D. & B., 209; *Sutton* v. *Robeson*, 9 Ired., 380. But counsel for the plaintiff says this was not an offer of compromise. We think it is manifest, from what occurred, that it could admit of no other construction.

The 9th exception is to the admission of the deposition of the plaintiff. This exception was not pressed before us, and we can see no ground upon which it can be sustained.

The 10th and 11th exceptions relate to the competency of the defendant to testify, under § 590 of *The Code*, in relation to the matters involved in the question.

As to the 10th, the plaintiff himself had testified in relation to the same transaction, and it is quite clear that the 11th related to no transaction or communication between the witness and the deceased. It was a fact in no way involving such a communication or transaction. *Lockhart* v. *Bell*, 86 N. C., 443, and cases cited.

The 12th exception is to the refusal of his Honor to refer the action to a referee upon the request of the plaintiff, made after all the evidence was in. Whatever may have been the discretionary power of the Court, to order or refuse a compulsory reference, if the application had been made in proper time, there was no error in refusing it after the close of the evidence.

The 3d and 4th issues were clearly presented by the answer and reply, and the exception 12½ cannot be sustained.

The 13th exception is to the refusal of his Honor to instruct the jury, that there is no statute of usury applicable to the notes declared on.

When the notes were executed, ch. 24, Acts 1866 (Battle's Revisal, ch. 114), in regard to usury, was in force. That act fixed the rate of interest at 6 per cent., " and no more," unless for money loaned, for which 8 per cent. might be charged, if specified in the contract; " and if any person shall agree to

take a greater rate of interest, * * * the interest shall not be recoverable at law." The penalty for usury was a forfeiture of all interest. *Coble* v. *Shoffner*, 75 N. C., 42.

It is insisted by the plaintiff that the act of 1866 was repealed by the penal statute of 1874–'75, which, in its turn, it is insisted, was repealed by the act of 1876–'77 (*Code,* §§ 3835, 3836), and the argument of the learned counsel is, that " usury laws are the creatures of statutes, and when there are none the matter is at common law and a question of contract, and the stipulated rate can be recovered. The penal provisions of usury laws are the only prohibition of this, and where they are repealed there is no obstacle. The Judge erred when he charged the jury that the plaintiff could only recover 6 per cent. interest. The establisment of 6 per cent. as the lawful rate, without a penalty for violation of the law, would mean simply that that should be the rate when no other was expressed. It would not prevent the recovery of any amount or rate stipulated to be paid. To prescribe a legal rate without a means of compelling men to observe the law, would be of no avail as a preventive of usury."

It would, perhaps, be as correct to say that interest is the creature of statute, and usury has been unlawful from the days of Moses.

The act 1875, sec. 4, declares that it shall not apply to existing contracts, and repealed only laws in conflict with it. The act of 1877 is " substituted " for the act of 1875, and, so far as the rate of interest allowed, is the same as that of 1866, and there has never been a repeal of the law limiting the rate of interest. Neither by the language of the acts of 1875 and of 1877, nor by implication, can such effect be given to them. *Jones* v. *Ins. Co.*, 88 N. C., 499 ; *Brinkley* v. *Swicegood*, 65 N. C., 626 ; *State* v. *Woodside*, 9 Ired., 496 ; *State* v. *Melton*, Busb., 49. We believe there has never been a day

in North Carolina, since long before it was a State, that it was lawful to take a greater rate of interest than *six per cent.*, or *eight per cent.* when stipulated, and the law would be treacherous to itself if it were to allow the enforcement of forbidden usurious contracts because no penalty was attached.

This case is easily distinguished from *Ewell* v. *Daggs*, 108 U. S., 150, and similar cases. Neither of the statutes in this State authorized a greater rate of interest than that of 1866, whether by contract or otherwise. The numerous cases cited by counsel, in regard to the effect of repealing statutes, have no application to the case before us. When the contract was made it was unlawful to charge a greater rate of interest than six per cent., or eight for money loaned, when stipulated in the contract, and the penalty was a forfeiture of all interest. The effect of the act of 1876–'7 was to relieve against the penalty. It could not have the retroactive effect to make the contract for usury lawful. The money loaned, with legal interest, can be collected, because the penalty (forfeiture of interest) is repealed; but it does not make that lawful and enforceable which was not lawful at the time. It was lawful to take six per cent. with or without contract. Such an interpretation of the legislative will would do violence to legislative history upon the subject of usury. The language of the statute gives it no such retroactive effect, and we cannot give it by any fair construction. The repeal of a statute which makes an act unlawful, or forbids a contract in relation thereto, cannot make the act lawful or validate the contract. *Pucket* v. *Alexander*, ante, 95.

The 14th exception cannot be sustained. There is no evidence tending to show that the defendant paid Dr. Copeland $3,000, and that he borrowed $1,000 from Mr. Coke and balance from plaintiff's testator. It also appears upon the face of the notes that they were payable January 3, 1875, with interest at twelve per cent. from that date. Exhibit "D" shows

that twelve per cent. was charged on the 1st of January, 1875, on the whole amount. This also disposes of exception to His Honor's charge, numbered 19.

Exceptions 15, 16, 17, 21, 22, 23, 24 and 25 relate to instructions asked and refused, and to instructions given and excepted to, and may be considered together.

It was in evidence that the defendant is an illiterate man; that he cannot read and write; that he was confiding, relying implicitly on those who gained his confidence; that he delivered a considerable quantity of cotton to, or for, the plaintiff's testator, "and relied entirely on Stephenson's statements." It does not appear that the notes or mortgage and deed of trust were read over to him; in fact it pretty clearly appears that they were not, and it does not appear that their contents were explained to him, or that he had any knowledge of their contents. It appears from the testimony of Mr Rogers, which bears upon its face evidence of fairness and candor, that he suggested that, in the event of death of the parties, the defendant would have nothing to show for certain credits; whereupon the testator took out two papers, which he said were the notes, and endorsed something on them. He further said that, if the face of the notes had been shown to him, he would have seen that interest was charged for one year before it was due, as appeared in statement " D." This was in January, 1875.

Upon a review of the evidence, we think there was no error in refusing the instructions asked, or in giving those excepted to.

The 18th and 20th exceptions relate to his Honor's charge in respect to interest. As we have already seen, the defendant was chargeable with interest at 6 *per cent.,* and there was no error in his Honor's instructions upon this question.

The 26th exception relates to the instruction in regard to the value of the cotton. We can conceive of no possible objec-

tion to the rule for ascertaining the value of the cotton as laid down by his Honor.

The 27th exception is to the refusal of the Court to exclude from the verdict the sums named, paid by Boone to plaintiff. The issues were fairly submitted to the jury, and if by mistake the defendant has paid more than the notes and legal interest, we are unable to see why the sums named should not be excluded.

There is no error. ·                    Affirmed.