BROWN et al. v. PERSONS et al.

(Circuit Court of Appeals, Third Circuit.  May 1, 1903.)

Nos. 13, 14.

1. BANKRUPTCY—POWERS OF COURT—VACATION OF ORDERS MADE BY REFEREE.

All orders of a referee in bankruptcy are made expressly subject to review by the judge, who has power to vacate an order discharging a trustee.

2. SAME.

Where an order made by a District Court, sustaining a claim of privilege of a witness examined by creditors in a bankruptcy proceeding, was reversed by the Circuit Court of Appeals, which remanded the cause for further proceedings, the court properly vacated an order previously made by the referee discharging the trustee, and required the witness to again appear for further examination.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Petition for Revision of Proceedings of the District Court of the United States for the District of New Jersey, in Bankruptcy.

F. B. Bracken, for petitioners.

Norris Morey, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge.  The petitioners in the present proceeding seek a review and reversal by this court of two orders made June 9, 1902, by the United States District Court of New Jersey, in the matter of Andrew Brown, a bankrupt, namely (first), an order vacating and setting aside a previous order of the referee approving the final account of and discharging the trustee, and (second) an order commanding J. Evarts Tracy, one of the appellants, to appear and submit to an examination under the acts of Congress relating to bankruptcy, and concerning the acts, conduct and property of said Andrew Brown, a bankrupt.

The pleadings, petitions and appeals of the bankrupt and of J. Evarts Tracy, who seeks a reversal of the decree commanding him to attend as a witness, though separate and individual, will be considered together, as they were presented together in the argument.  The facts appearing from the petitions and papers referred to therein, are as follows:

Andrew Brown was, upon his voluntary petition, adjudicated a bankrupt, on October 5, 1898.  Pending the consideration by the bankruptcy court of his petition for a discharge, and the specifications filed by creditors in opposition thereto, an order was made by said court for the attendance of said J. Evarts Tracy, to be examined as a witness in said proceedings, concerning the acts, conduct or property of the

bankrupt. Pursuant to this order, Tracy appeared as a witness and was examined on two separate days, November 15 and November 27, 1900. During the course of the examination, he declined to answer certain questions, on the ground (first) of their irrelevancy, and (second) that they involved the disclosure of communications made to him by his client, while the relation of counsel and client subsisted between them, which were, therefore, privileged communications. In this refusal to answer, he was sustained by the referee and by the judge of the District Court, the order of the latter denying the petition of creditors, that Tracy be compelled to answer, having been made April 2, 1901. Upon petition and appeal, this order was reviewed by this court, and, by a decision filed January 17, 1902 (50 C. C. A. 411, 112 Fed. 652), was reversed, and the cause remanded to the District Court for further proceedings to be taken, in conformity with the opinion of this court. Its mandate was filed in the court below on February 18, 1902. To understand the scope and exigency of this mandate, it will be necessary to refer to the opinion of this court, as filed January 17, 1902, which we quote as follows:

"This was a proceeding under the provisions of the bankruptcy act for the examination of third persons as witnesses and the production by them of books and papers, in which J. Evarts Tracy (appellee) was summoned to testify and to produce documents concerning certain real estate at Bay Ridge, Long Island, with a view to the ascertainment of 'the interest of said Andrew Brown (the bankrupt) in said property in any way, directly or indirectly, by a secret trust or otherwise.' It is true that when the appellee was interrogated respecting this real estate, it had not been shown that the bankrupt had any interest in it; but his relationship to the parties, to several transactions concerning it, the history of those transactions, and the communications which ensued between the bankrupt and the witness when the latter was served with a subpœna, did appear, and disclosed a state of facts which justified the investigation. Its object was to determine whether the bankrupt did not have an interest in the property which should be applied to the payment of his debts, and the discovery sought would have been superfluous if, as a condition precedent to its requirement, it had been necessary to independently establish the existence of such interest. Although it is the duty of the court to confine such examinations within the limits to which the purposes for which they are authorized restrict them, yet where there are circumstances warranting the investigation no obstruction of it should be permitted which is not justified by law. In re Horgan et al., 39 C. C. A. 118, 98 Fed. 414. In this instance the witness claims that his refusals to answer were justified, first, because the matters to which the examination was directed were 'immaterial and irrelevant to the subject-matter of inquiry in this proceeding,' and, second, 'that the same were confidential communications between himself and his clients, which he was forbidden by law to disclose.'

"That the first of these claims is inadmissible we have no doubt. The relevancy of any particular matter to the subject under judicial investigation is always for determination by the court, and no witness is entitled to decide for himself that the facts which he is asked to disclose would not tend to prove the existence or nonexistence of the ultimate fact to which it is intended to relate them. Yet this is precisely what this witness has undertaken to do. During his examination, and after he had answered some questions and had refused to answer others, he said 'that the land at Bay Ridge, Kings county, New York, referred to in my testimony, and concerning which I have been questioned, is held by me by an absolute title in fee simple; that I do not hold any part of or interest in it for the benefit of said Andrew Brown, or of any one representing him; that I have never sold or conveyed any part of the land at Bay Ridge originally acquired by me, or any land at Bay Ridge now held by me, at the request of said Andrew Brown; that I have

never accounted or been accountable, and am not now accountable, directly or indirectly, to him or to any one representing him for any proceeds of any of such land sold, or which may be sold, and that said Andrew Brown has no interest, legal or equitable, in any such land or in any proceeds of sale of the same or any part thereof. And I respectfully submit that I am not subject to other or further examination in respect of any such matters, for that the same are wholly immaterial and irrelevant to the subject-matters of inquiry in this proceeding.'

"It is not necessary to question, and we imply no doubt of, the good faith of the witness in making this statement; but it cannot be accepted as relieving him from 'other or further examination.' It is, in substance, but an expression of his understanding that the facts which he declines to reveal would, if revealed, appear to be immaterial, and to this opinion of his, though not even evidential, he asks that there shall be conceded determinative force. Whether the title which he holds is an absolute title, in which Andrew Brown has no interest, it is the function of the court to decide, and that it may do so intelligently it is requisite that it should be fully informed of all the connected facts and attendant circumstances. If upon their disclosure it shall transpire that the appellee is the absolute owner of the property in question, the investigation will do him no harm; but if, on the other hand, they shall exhibit an interest, legal or equitable, in the bankrupt, the enforcement of any right which may in consequence accrue to his creditors will be but a debt of justice, the discharge of which can work no legal injury to any one.

"This court has neither authority nor inclination to repudiate the rule which protects from exposure, unless with the client's consent, all communications between him and his counsel, made during the subsistence of that relation, in reference to any matter respecting which the latter has been, and properly could be, professionally consulted. This rule was applied—apparently for the first time—in the case of Berd v. Lovelace, Cary's Rep. 88, and for three centuries at least it has been steadily upheld by the courts upon the ground that for the proper administration of the law, the confidence which it encourages the client to repose in the attorney to whom he resorts for legal advice and assistance should upon all occasions be inviolable. But it has been forcibly and vehemently assailed (Bentham's Rationale of Judicial Evidence, book 9, pt. 4, c. 5) and the suppression of evidence which it effects can be justified only when the limitations which restrict the scope of its operations are assiduously heeded. Therefore, it is requisite that in every instance it shall be judicially determined whether the particular communication in question be really privileged, and in order that such primary determination may be advisedly made, it is indispensable that the court shall be apprized, through preliminary inquiry, of the characterizing circumstances. There is no presumption of privilege, and though its allowance may, in a clear case, be founded upon the voluntary statement of the attorney that his knowledge of the fact to which he is asked to testify was acquired in professional confidence, yet, wherever, as in this case, the circumstances suggest that the sufficiency of the grounds of that statement should be considered, it is the right of the opposing party to demand that the proponent of the privilege shall be submitted to such interrogation as may be necessary to test its validity. Hughes v. Boone, 102 N. C. 160, 9 S. E. 286. In the present case the witness said: 'Andrew Brown, the bankrupt in this proceeding, is not and never has been a client of mine, * * * and I respectfully decline to answer further questions relating to such matters * * * upon the ground that the same were confidential communications between myself and my clients, which I am forbidden by law to disclose.'

"If the views we have expressed be correct, it is manifest that the position thus assumed is untenable. The witness declines to answer—not after inquiry and adjudication by the court, but upon his own mere declaration that the matters to which his declarations relate were privileged communications, and thus both of the facts and the law he constitutes himself the exclusive judge. The province of the court cannot be thus usurped. If it could be, it is obvious that the rule under consideration, which is designed to promote the administration of justice, might readily be misused for its obstruction, and become in consequence too pernicious to be tolerated.

"In discussing the broad questions involved, we have perhaps sufficiently indicated the method of procedure which should be pursued in such cases, but with reference to the situation disclosed by this record, it may be desirable that we should say a few additional words directly upon that subject. It appears that the appellee refused to answer in about sixty separate instances, and it is probable that, if the attempted examination had not been suspended, he would have been further interrogated, and with the same result. Under these circumstances, and in view of the fact that the court below has not done so, it is not practicable for us to decide particularly and in detail what questions the witness should be required to answer, or to do more than indicate in general terms the course which, in our opinion, should be adopted to enable that court to pass upon every point that has arisen, or may arise, and to this end we state that our present decision is that (1) upon objection or refusal to answer upon the ground of irrelevancy, if the question asked appear to be relevant, it should not be excluded, or the witness be excused from replying to it, because of his assertion that his answer, if made, would disclose the personal affairs of himself or of others, not material to the subject of inquiry; and (2) on declination of the witness to testify upon the ground that the matter or matters sought to be discovered came to his knowledge in professional confidence, he is, by way of preliminary investigation, to be subjected to such interrogation as may be necessary to enable the court to determine for itself whether the communication referred to be, under the circumstances, a privileged one; and thereupon to make such order as may be proper.

"The order of the District Court, filed April 2, 1901, dismissing the petition of the People's Bank and others, upon the ground 'that the said J. Evarts Tracy should not be compelled to answer the questions propounded to him by the counsel for the petitioners, or any of them,' is reversed, and the cause will be remanded to that court for further proceedings to be there taken in conformity with this opinion and determination."

After the issuing of the said mandate, the trustee filed his final account, and on May 14, 1902, the referee notified all creditors of the filing of the trustee's account, and that a final meeting of said creditors would be held on May 26, 1902. In default of objection to the trustee's final account, the referee made an order, approving the same and discharging the trustee, which order was filed before 11 o'clock on said 26th day of May, 1902. On the afternoon of the same day, Courtlandt Parker, Jr., Esq., acting on behalf of Norris Morey, Esq., attorney for appellees, appeared at the referee's office and filed exceptions to the trustee's final account, and on June 5, 1902, applied to said referee to open the order discharging the trustee, so that the said exceptions and further objections which he proposed to make could be heard. As a ground for said application, it was alleged in the affidavit filed by Mr. Parker, that the exceptions were forwarded to him by mail, and should have reached his hands on the afternoon of Saturday, May 24th, but did not until about 1 o'clock on May 26th. The referee declined to entertain the application. The appellees thereupon, through their counsel, applied to the judge of the said District Court, to review the action of the referee, in refusing to open the order discharging the trustee.

On May 31, 1902, the appellees, by their attorneys, filed a petition, reciting, inter alia, the proceedings in this court, relating to the examination of J. Evarts Tracy, referred to above, and praying that an order be made, requiring said Tracy to pay the costs of said proceedings, that he be adjudged in contempt, and that he be ordered to appear before said referee on the day named, to be examined concerning

the acts, conduct, or property of said Andrew Brown. The application for a review of the action of the referee, in refusing to open the order discharging the trustee, and the motion to adjudge the said Tracy guilty of contempt, and compel his attendance as a witness for further examination, were heard together by the District Court judge, June 9, 1902, the said Tracy and Andrew Brown, the bankrupt, and the appellees, being represented by counsel at said hearing. After hearing, the court made two orders, as follows:

"First. That the order of Frederick W. Leonard, referee, dated May 26, 1902, approving the accounts of said trustee, be opened and vacated, and that Pierre F. Cook, trustee, file his final report within twenty days after the date hereof, and that said receiver and other moving creditors file their objections to the account as heretofore filed within ten days from the date hereof.

"Second. That the motion to adjudge Tracy guilty of contempt and that he be required to pay costs be denied; and further ordered that said Jeremiah Evarts Tracy attend before Frederick W. Leonard, referee herein, on a day to be designated by said referee upon not less than ten days' notice to be served on said Tracy on behalf of said petitioners, to submit to an examination under the acts of Congress relating to bankruptcy and concerning the acts, conduct or property of said Andrew Brown, bankrupt, in conformity with the mandate and opinion of the Circuit Court of Appeals herein, and that a subpœna requiring such attendance issue therefor, out of this court, upon the request of said creditors and petitioners."

The petitioners pray that this court will now review said orders, and reverse the same, and they raise the following questions of law:

"First. Whether the court below had jurisdiction to open and vacate the order of the referee discharging the trustee and thus closing the bankrupt's estate, or whether, assuming such jurisdiction to exist, it was properly exercised under the facts in this case.

"Second. Whether, if said first question be determined in favor of appellants, the order commanding the attendance of J. Evarts Tracy as a witness to testify concerning the acts, conduct and property of Andrew Brown, a bankrupt, was not wholly void and without legal authority, because made after the bankrupt's estate had been closed.

"Third. Whether even if the estate of said bankrupt had not been properly closed at the time said order to examine Tracy was applied for, the petitioning creditors were not guilty of such laches in making the application that it should have been denied on this ground alone.

"Fourth. Whether in view of the fact that more than a year had expired after the discharge of the bankrupt, at the time the application for the examination of Tracy was made, it should not have been denied on that ground.

"Fifth. Whether the petition, upon which the application for the examination of Tracy was based, does not show that such examination would of necessity be without value for any purpose connected with the administration of the bankrupt's estate."

We have stated these proceedings at some length, because we think by so doing, the insufficiency of the grounds upon which the contentions made by the petitioners rest, will be thereby apparent.

The power of the District Court to vacate the order of the referee, discharging the trustee, is denied by the petitioners. We have no doubt, however, that this power exists, and is necessary to the efficient administration of the bankrupt law, and the accomplishment of its purposes. There are no terms of the bankrupt court. It is always open, and the power over its own orders and decrees is ample to prevent in-

justice and correct errors. No such order of the referee is a finality, as claimed by petitioners' counsel. The jurisdiction with which a referee is invested is made expressly subject to review by the judge of a court of bankruptcy. See section 38 of that act. Act July 1, 1898, c. 541, 30 Stat. 555 [U. S. Comp. St. 1901, p. 3435]. Subdivision 10 of section 2 of the same act expressly confers upon courts in bankruptcy the power "to consider and confirm, modify or overrule, or return with instructions for further proceedings records and findings certified to them by referees." Not only was the power of the District Court in the premises plenary, but we think the facts warranted its exercise. The action of the court below was in direct compliance with the mandate of this court, as sent down in the proceedings already quoted. While we do not think that the discharge of the trustee operates to deprive creditors of the right to institute and prosecute proceedings or suits for the discovery or recovery of the bankrupt's assets, we still think there was propriety in overruling the hasty action of the referee, in order that the testimony of the recalcitrant witness, Tracy, might be taken in support of exceptions to said account, thus giving a more convenient and summary method of pursuing concealed assets, if any there should prove to be, and surcharging the trustee's account. It would be a remarkable situation, indeed, if, after the mandate of this court had gone out for the examination of the witness, Tracy, in the manner prescribed by this court, the referee in bankruptcy could, by discharge of the trustee, render the action and mandate of this court abortive and futile.

We have already decided that the witness, Tracy, must answer such questions as may be put to him, touching his ownership and title of and to the property inquired about, in order that the court may determine the relevancy of such inquiries. In other words, such inquiries are relevant until the answers show to the judge the contrary to be the case, and it cannot be permitted to interpose the action of the referee in the premises, as an obstacle to what this court has decided to be a proper procedure. The court below was clearly right in setting aside the order of the referee, if it might be thought such an obstacle, upon that ground alone.

This disposes, also, of the second main contention of the petitioners, that the order commanding the attendance of the witness, Tracy, to testify concerning the acts, conduct or property of the bankrupt, was wholly void and without legal authority, because made after the estate had been closed. We have just said that the court had jurisdiction to open up the estate, by annulling the order of the referee discharging the trustee. The case, therefore, stood as if no such discharge had ever been made, and the bankrupt's estate was not, therefore, closed at the time the order upon Tracy to testify was made. But from what we have already said, it was not necessary that the discharge of the trustee should have been set aside, in order to justify the action of the court in commanding the attendance of a contumacious witness before the referee, and compelling him to testify on the lines pointed out by the opinion of this court, already referred to.

We do not think the other contentions, founded upon the discharge of the bankrupt and alleged laches, require consideration from this

court, and we are of opinion that the orders of the court below, referred to in the petitions before us, should be, and they are hereby, affirmed.